Westbrook, J.
The plaintiff, Edward A. Durant, as the assignee of A. J. Williams & Co., brought this action against the defendant John O’Brien, to recover for an alleged balance due to them, as sub-contractors under the defendant, for work done and materials furnished upon the Clinton state prison and warden’s house, at Dannemora, in this state. By order of this court the action was referred, on the 18th day of January, 1882, to Abraham Y. De Witt, counselor-at-law, at Albany, E". Y. The referee was suggested by the counsel of the defendant, and consented to by the counsel for the plaintiff. After a number of hearings before the referee, the cause was finally submitted to him for a decision on the 1st day of July, 1882. The report of the referee was made on the L7th day of August, 1882, and was in favor of the plaintiff for the sum of $5,251.97. From the judgment perfected noon such report, the defendant appealed to the general term *315 of this court, and the appeal was argued in that court on the-5th day of December, 1882, and by its decision, rendered on the 3d day of February, 1883, the judgment entered upon the referee’s report was affirmed, with costs. Within a few days thereafter an appeal was taken by the defendant to the court of appeals, which is still pending, unargued" and undecided. The defendant now moves to set aside the report of the referee upon the ground that such referee was biased in favor of the plaintiff, and such bias is sought to be inferred from the relations which the referee sustained to one Allen B. Durant, a nephew of the plaintiff, as his attorney and counsel and friend.
There is no proof presented upon this motion tending to-show that Hr. De Witt was in any way connected either as a. friend or legal adviser with the plaintiff in the action; but it is insisted that because he was the friend and the legal adviser of the nephew of the plaintiff Allen B. Durant, and because he was employed in behalf of the estate of Allen B. Durant to conduct certain proceedings before the surrogate of the county of Albany, and because the'plaintiff and Allen B. Durant were on friendly terms, that therefore the referee must have been biased in favor of the plaintiff. This inference, it seems to me, is most illogical and unjust. If adopted as sound it would prevent a judge from sitting in a cause in which any of the parties thereto were of kin to a friend and companion of such judge, and towards whom the judge had occupied the relation of legal adviser.
Prior to the appointment of Hr. De Witt as referee in this action, he had acted as the legal adviser of Allen B. Durant, the nephew, and when the parties and counsel in this action met before him for the first time for the hearing of this cause, the referee explained fully to the counsel his intimacy with Durant, and the relation which he bore to him, saying to them that he did so to enable the defendant’s counsel, if they so desired, to have another referee appointed in his place. The counsel for the defendant refused to change the referee- *316 and insisted upon proceeding with the trial of the action before him. After this occurrence, and during the trial of the action before the referee, Allen B. Durant was taken ill, from which illness he never recovered. During such illness, and on the 20th of June, 1882, Mr. De Witt drew the last will and testament of Mr. Durant, and on the fifth of July following drew the codicil thereto. In November following A. B. Durant died, and in a contest in regard to such will before the surrogate, which was long after Mr. De Witt’s connection with this cause as referee had ceased, Mr. De Witt acted as the counsel for the estate. There is, however, no evidence tending to show that Mr. De Witt ever consulted or advised with the plaintiff in regard to the nephew, his family or estate; on the contrary, the affidavit of Mr. De Witt and of the plaintiff both show that there was no intimacy whatever between them, and that they were merely passing acquaintances, and the only social intercourse between them consisted of formal calls by Mr. De Witt on new-years’ days at the house of the plaintiff. While courts should be careful 11 to see that no improper relations exist between a referee and one of the parties to an action, and that nothing occurs during the progress of the trial which shall in anywise tend to produce a favorable impression in behalf of one of the parties to the reference, yet such scrutiny should not be carried to the extreme length of holding that because a referee sustains friendly relations to the kin of one of the parties, relations so close as to lead to his employment as his legal adviser, and the legal adviser of his estate, that such relations would bias his judgment in the action in which he had been appointed referee. In the present case, as has already been said, the defendant and his counsel were fully informed, before the trial cf the reference was commenced, that such relations existed between the referee and the nephew of the plaintiff. Whatever inference could justly and properly be drawn from such relation, could have been drawn as well when the trial of this cause commenced as it can be now. The defendant and his *317 counsel then knew that Allen B. Durant, the nephew of the plaintiff was the friend and client of the referee. If that fact would of itself bias and disqualify the referee, it was then known and they had no reason to believe that because of the reference the relation which Mr. De Witt then sustained to Allen B. Durant would be broken off and his friendship suspended. All that has transpired since simply evidences the continuance of friendship and relations which existed when the trial of this action was begun, and from which no more unfavorable concluí ion can now be drawn than could have been drawn at the commencement of the trial. The referee was well known to the counsel of the defendant, at least, if not to the defendant himself, when the relationship between the referee and the nephew were disclosed, and if such counsel, with minds keenly awake to the rights of their client, could see nothing in the relationship which Mr. De Witt sustained to Allen B. Durant to disqualify him from acting as such referee, it cannot be surprising if the judge to whom this motion is now submitted should be equally unable to see the disqualification which such relationship imposed. Many of the statements made by the widow of Allen B. Durant, as to the closeness of the friendship which existed between her deceased husband and the referee, are denied by the latter, and especially and flatly does he deny her general statement that he would uphold the Durants in all their difficulties with her. It is proper also to state that all the trusts and duties confided by the will of Allen B. Durant to the referee, have been renounced, and not accepted by him, and that therefore so much of the motion papers as allege the creation of such fa usts by the will, can have no weight in the determination of this motion.
A careful reading of all the papers upon this motion has failed to present to my mind any fact which would justify an order setting aside the report and judgment in this action. There are loose assertions in the affidavits presented by the plaintiff to the effect that there was an intimacy between the plaintiff and the referee. Such allegations, however, are by *318 persons who could not, and did not know the truth of the facts charged. If such intimacy was known to them, then such knowledge should have been used to vacate the order of reference before the report was made, or rather, it should have prevented the naming of the referee by the defendant, and the conclusion to proceed with the trial before him when his relation with Allen B. Durant was fully explained. It is evident, however, from all the allegations of the moving papers, that such general charges were founded upon subsequent inquiries and not upon actual knowledge. The positive and distinct denials of such intimacy by both the plaintiff and Hr. De Witt, and sustained by others who had the opportunity and means of knowing the truth of what they have affirmed, must be accepted as true, and therefore, all suspicions of bias founded upon such alleged intimacies must vanish, because deduced from supposed facts which have no existence in truth. The motion must, therefore, rest solely and only upon the ground that the referee was the friend and legal adviser of the nephew of the plaintiff. Such fact of itself would not warrant the inference of bias and partiality, and when it further appears that all this was known to the counsel of the party moving before the trial of this action commenced, it cannot be seen upon what possible ground this motion can be granted. If injustice was done by the report, the general term of this court did not discover it; but if it was in fact committed, the court of last resort in which this action is now pending, will do the defendant justice. It will be unjust to the plaintiff, upon the grounds presented, to subject him to the costs of another trial, and it would be a very grave reflection upon the character and standing of the referee for this ■court to assume that he was biased and prejudiced, simply and only because he had been the friend and legal adviser of a relative of the plaintiff.
The motion, therefore, to set aside the report must be •denied.